

November 13, 2025

**By ECF & Fedex**

Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York

Re:   *Bellere v. City of New York*, No. 24 Civ. 5131 (AKH)

Your Honor:

My firm, alongside Wylie Stecklow PLLC, represents the fifteen plaintiffs in this putative class action, which centers on detainees' exposure to fire and smoke while incarcerated in Rikers Island's North Infirmary Command on April 6, 2023. We write under Rule 2(E) of Your Honor's Individual Rules to request the Court **(i)** order Defendant Health and Hospitals Corporation ("HHC") to produce certain third-party medical records; and **(ii)** enter the proposed protective order enclosed as Exhibit 1, which courts have entered in the same circumstances and both Plaintiffs and HHC agree complies with HIPAA and its implementing regulations at 45 C.F.R. § 164.512.[1]

***Background and Parties' Dispute.*** On July 9, the Court ordered Defendant City of New York to identify the individuals incarcerated in the North Infirmary Command on the day of the fire. Dkt. 226. On July 24, the City identified 287 individuals. Excluding plaintiffs, prior settlements, and other odds and ends, 260 of those individuals are potential class members. Plaintiffs' counsel have subsequently reached out to the 143 potential class members that they have so far located, and have received, in return, 50 signed HIPAA authorizations that they have recently produced to HHC (and ***not a single refusal*** to provide Plaintiffs' counsel a signed authorization).[2] That process, while ongoing, is protracted and time-consuming, and it is unlikely that Plaintiffs' counsel will be able to timely locate, contact, and receive authorizations from a significant portion of the remaining potential class members. On November 12, HHC agreed to provide the records related to the HIPAA authorizations that were recently produced "for whom there is enough information on the HIPAAs to locate the records."

Previously, on August 13, Plaintiffs requested that HHC agree to enter the enclosed protective order and produce potential class members' post-April 6, 2023 Correctional Health Services medical records. Ex. 2. On September 9, HHC objected to doing so, Ex. 3, and the parties met and conferred regarding this request on September 25 and October 10. Through the meet and confer process, Plaintiffs agreed to limit their request to only

---

[1] 45 C.F.R. § 164.512 is titled "Uses and disclosures for which an authorization or opportunity to agree or object [to disclosure of protected health information] is not required." Sub-section (e) establishes the standard for "[d]isclosures for judicial and administrative proceedings."

[2] Plaintiffs' counsel have additionally received approximately 25 HIPAA authorizations from additional potential class members that are deficient and have not yet been produced.

---

*Handwritten annotation by Judge:* P/b' request is denied. Each member of the putative class first must consent. The non-members are not parties. 11-25-25 /s/ A.K. Hellerstein

six months of medical records following the fire (for those potential class members for whom Plaintiffs' counsel has not secured a HIPAA authorizations). HHC's remaining objections are on grounds of privacy and proportionality/burden. Ex. 4.

There is little question that the records Plaintiffs seek are relevant, not otherwise obtainable, and critical: Plaintiffs require these records to perform appropriate due diligence as potential class counsel for this putative class. Counsel must identify class members, formulate adequate subclasses, and address numerosity and other objections raised to potential class certification by Defendants. Counsel must also understand the specifics of the harm, both to engage the correct medical experts and to competently and ethically engage in settlement discussions.

There is no dispute that disclosure of these records would be appropriate under the terms of the enclosed protective order—HHC agrees it would be appropriate. The sole issue remaining after the multiple meet and confers is, most simply stated, whether HHC can satisfy its obligation that producing these records would occasion undue burden. We respectfully submit that it cannot prove such undue burden and has waived its right to submit information concerning any burden.

***HHC Cannot Show Undue Burden.*** It is HHC's burden to "show how, despite the broad and liberal construction afforded the federal discovery rules, [Plaintiffs'] request is not relevant, or . . . is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 88 (S.D.N.Y. 2016) (quotation marks and citations omitted).

HHC's counsel acknowledged this burden at the parties' October 10 conferral. The parties agreed that HHC's counsel would shortly thereafter **(i)** supply Plaintiffs' counsel with burden information to facilitate the parties' efforts to resolve this matter without court intervention; and **(ii)** review with its client what other less burdensome means may exist to identify potential class members' injuries. Ex. 5 at 16. Unfortunately, HHC's counsel's persistent efforts to secure this information from their client in the following weeks failed. *Id.* at 7-11. On October 24, rather than sharing any burden information whatsoever, HHC's counsel instead informed Plaintiffs that HHC's position was that:

> HHC "objects to providing further information regarding the burden of conducting such searches." *Id.* at 7.

Counsel's use of the word "further" there is something of a misnomer: Plaintiffs have received *no* information regarding what if any burden—let alone undue burden—attends their request. *See id.* at 1-21. It nonetheless appears unlikely that there is any meaningful burden at all. All HHC's medical records are held electronically,[3] and HHC presumably processes many dozens (if not hundreds) of such medical records requests every day in the regular course of business (each of which federal law requires it process

---

[3] *NYC Health + Hospitals Completes Successful Transition to New Epic Electronic Medical Records System* (Mar. 6, 2020), publicly available at: https://shorturl.at/eqQFX.

within 30 days).⁴ HHC has not and cannot carry its burden to show producing the requested medical records would be unduly burdensome.

***The Proposed Protective Order Addresses Privacy Concerns.*** Disclosure of the records at issue are appropriate under HIPAA and its implementing regulations. *National Abortion Federation v. Ashcroft*, No. 03 Civ. 8695 (RCC), 2004 WL 555701, at *6 (S.D.N.Y. 2004) ("The regulations permit disclosure of health information without patient consent pursuant to a qualified protective order."). "A covered entity"—here, HHC—"may disclose protected health information in the course of any judicial or administrative proceeding" without an authorization "[i]n response to an order of a court . . . provided that the covered entity discloses only the protected health information expressly authorized by such order" and does so on certain assurances⁵ that the enclosed protective order supplies. 45 C.F.R. § 164.512(e)(1)(i). The protective order submitted herein is next to identical to those protective orders that courts have entered in comparable circumstances. *See, e.g., Allen v. Koenigsmann*, No. 19 Civ. 8173 (LAP), 2021 WL 5086272 (S.D.N.Y. Nov. 2, 2021) (ordering disclosures of putative class members' protected health information and entering protective order; order enclosed as Exhibit 6); *M.G. v. Cuomo*, No. 19 Civ. 639 (CS) (AEK), 2022 WL 16857177 (S.D.N.Y. Oct. 14, 2022) (same); *Milburn v. Coughlin*, No. 79 Civ. 5077 (LAP), 2021 WL 4754768 (S.D.N.Y. Oct. 12, 2021) (same, for current and former class members' PHI). Disclosure of the records at issue is also fully consistent with HHC's policy governing disclosure of Correctional Health Services records like those at issue here. Ex. 7 at 4.

Accordingly, Plaintiffs respectfully request that the Court **(i)** order HHC to produce the April 6, 2023 to September 6, 2023 medical records for the potential class members for whom Plaintiffs' counsel has not obtained authorizations (and to extent HHC is not producing all post-April 6, 2023 medical records for those members for whom Plaintiffs' counsel has provided HHC authorizations under the terms of those authorizations, the Court should also order the production of these records); and **(ii)** enter the proposed protective order.⁶

---

[4] HHC does not appear to publish statistics regarding the number of medical records requests it handles, nor do comparable health systems. However, it holds over five million electronic patient records. *Id.* If just 1% of patients request their records each year, HHC processes at least 135 requests per day.

[5] *See McDay v. Eckert*, No. 20 Civ. 233 (JLS) (JJM), 2024 WL 6080431 (W.D.N.Y. Apr. 12, 2024) ("HIPAA does not create a privilege against production or admission of evidence; it merely creates a procedure for obtaining protected medical records in litigation. It permits protected health information to be revealed in response to a discovery request if the party seeking the information makes a reasonable effort to secure a qualified protective order, that is, an order that prohibits the use or disclosure of the information outside the litigation and requires the return or destruction of the information at the end of the litigation.") (quotation marks and citations omitted) (cleaned up).

[6] In its response below, HHC raises § 3-08 of the Rules of the City of New York for the first time in this litigation, despite the parties' multiple meet and confers on this issue. Plaintiffs ask the Court to note that HHC sedulously avoids arguing that the enclosed protective order is actually deficient in light of **(i)** HHC's pre-existing agreement that it is not, Ex. 5 at 10-11, 13; and **(ii)** that § 3-08, like 45 C.F.R. § 164.512, authorizes disclosure "pursuant to a lawful court order."

3

### *HHC's Position*[7]

HHC objects to providing the medical records for third-parties for whom counsel has not obtained a HIPAA release, for several reasons, some of which are not addressed, or are inaccurately addressed, by plaintiffs' counsel in this letter.

As was discussed during our meet and confer on October 10, 2025, HHC's objections stem from not only privacy concerns but also from the fact that plaintiffs' counsel has obtained discovery from both the DOC Defendants and the Medical Defendants that will assist them in identifying potential class members. Specifically, the DOC Defendants have provided Injury to Inmate Reports related to the April 6, 2023 fire, and HHC has provided complaints/grievances related to the April 6, 2023 fire. It is precisely this type of discovery that would logically assist plaintiffs' counsel in identifying potential members of the class. By stark contrast, the demand for the medical records of 200 + individuals who were present in the NIC the day of the fire is exactly the type of fishing expedition that the courts typically prohibit. Beyond their mere presence in the NIC (a multi-level facility), plaintiffs' counsel has not set forth any good faith basis for infringing on the privacy rights of these individuals. *See 287 Franklin Ave. Residents' Ass'n v. Meisels*, 2012 U.S. Dist. LEXIS 72855 (SDNY 2012); *Katz v. Total Mobile Ultrasound, Inc.*, 2023 U.S. Dist. LEXIS 65872 (SDNY 2023) (denying plaintiff's motion for pre-class certification discovery citing privacy and burden concerns).

It is also significant that plaintiffs' counsel has been able to obtain HIPAA releases for 50 individuals in a relatively short period of time. They have not articulated any reason why they would not be able to obtain HIPAA releases for the remainder of the 200 + potential class members.

Next, Correctional Health Services, operated by HHC, is not a "covered entity" subject to restrictions or exceptions under 45 C.F.R. § 164.512. Rather, the confidentiality of the subject CHS records is mandated by 40 RCNY 3-08. As such, plaintiffs' reliance on exceptions to 45 C.F.R. § 164.512 is misplaced and plaintiffs' application on the basis that there is a HIPAA exception should not be granted because the argument is not based in law.

Finally, as to CHS's burden objection, we have been advised by the Medical Records department that it will take approximately 3 – 4 weeks to gather the medical records for the individuals for whom properly executed HIPAA releases were provided. The timeline for production will be even further extended if the patient did not complete section 9(a) of the release, because the records will need to be redacted prior to producing them. Next, because of the manner in which the records are stored, if an individual had separate periods of detention during the time for which the records are requested, they will need to be retrieved separately. As such, a request for 200 + individuals could necessitate retrieval of many more than 200 + separate medical charts. Based on this, HHC estimates that retrieval of records could very well take several months.

---

[7] Authored by Alejandra Gil, Esq.

Based on the objections articulated herein, HHC submits that plaintiffs' motion to compel should be denied.

***

We thank the Court for its time and attention to this matter.

Respectfully submitted,

s/

Adam Strychaluk
Wylie Stecklow

Encl.   Ex. 1 – Proposed HIPAA-qualified protective order
      Ex. 2 – Plaintiffs' Aug. 13, 2025 discovery request
      Ex. 3 – HHC's Sep. 22, 2025 discovery response
      Ex. 4 – HHC's updated Oct. 15, 2025 discovery response
      Ex. 5 – Correspondence
      Ex. 6 – *Allen v. Koenigsmann* protective order
      Ex. 7 – HHC policy

CC:   All counsel of record